```
UNITED STATES DISTRICT COURT          USDC SDNY
SOUTHERN DISTRICT OF NEW YORK         DOCUMENT
                                      ELECTRONICALLY FILED
------------------------------------x DOC #:_____
JUAN TOMAS SANCHEZ,                 : DATE FILED: 1/8/19

              Petitioner,           :
                                        14 Cr. 209 (RMB)
        -against-                   :   17 Civ. 4078 (RMB)
                                        **DECISION & ORDER**
UNITED STATES OF AMERICA            :

              Respondent.           :
------------------------------------x
```

## I. Background

On May 18, 2017, Juan Tomas Sanchez ("Sanchez" or "Petitioner") petitioned to vacate his sentence of 32 months imprisonment and three years of supervised release imposed on September 21, 2015. See Motion to Vacate, dated May 18, 2017 ("Pet.'s Motion") and Verified Declaration in Support of Motion Pursuant to 28 U.S.C. § 2255 ("Seidler Decl."), dated May 18, 2017; see also Judgment, dated September 21, 2015. Sanchez contends that he was the "victim" of ineffective assistance of counsel in the district court because his retained trial counsel, Robert Osuna ("Osuna"), permitted him to plead guilty knowing the "plea to count 3 [aggravated identity theft] was without factual basis." Pet.'s Motion at 5; Seidler Decl. at 6. Sanchez is currently represented by retained counsel B. Alan Seidler, Esq.[1]

---

[1] Mr. Seidler is Sanchez's third counsel in this case. On April 7, 2015, Sanchez wrote to the Court, requesting that new counsel be appointed in place of Mr. Osuna because Sanchez could "no longer afford to have a paid attorney." Def. Letter dated April 7, 2015. At a court hearing held on April 28, 2015. Joseph Grob, Esq., a CJA attorney, was appointed to represent Sanchez. See Tr. of counsel substitution hearing at 3. And, on July 7, 2015, Mr. Grob wrote to the Court and stated: "Since my appointment, Mr. Sanchez asked me to review his file to assist him in determining whether to challenge the Guidelines calculations or negotiate a resolution to outstanding issues between the parties. . . . I have now had an opportunity to review the file, to meet with my client and to speak with the Government about the issues and I can now report that

1

On July 27, 2017, the Government opposed Sanchez's motion arguing that Sanchez filed his petition more than a year and a half late, and that it should be denied on that basis alone. Government Memorandum in Opposition, dated July 27, 2017 ("Gov't Opp'n"), at 6.[2] The Government also contends that "Sanchez has not made any showing that his counsel was ineffective or that, as a result of any purported ineffectiveness, he was prejudiced in any way." Id.

On July 2, 2018, attorney Osuna submitted an Affirmation, dated July 2, 2018, in which he stated: "[M]y office and I had done an extensive amount of work preparing for trial." Affirmation of Robert Osuna, Esq., dated July 2, 2018 ("Osuna Aff."), at 1. When the Government indicated that they had new witnesses who could testify about Sanchez's extensive trafficking in fraudulent tax return checks from the U.S. Treasury, Sanchez chose to enter a plea of guilty to all three counts of the Indictment. Id. "That choice was his and his alone. My office and I were ready to try the case and would have done so had the defendant [Sanchez] desired to go to trial . . . ." Id.

On July 5, 2018, Petitioner's counsel, Mr. Seidler, filed a reply affirmation. See Reply Affirmation in Support of Motion Pursuant to 28 U.S.C. § 2255, dated July 5, 2018, at 1–2.

By way of additional background, on November 26, 2014, after he had signed "advice of rights" forms in both Spanish and English, Sanchez pled guilty to all three counts in Indictment 14 Cr. 209, namely: (1) conspiracy to steal government funds, in violation of 18 U.S.C. § 371; (2) theft of government funds, in violation of 18 U.S.C. § 641; and (3) aggravated identity theft,

---

the dispute over the applicable Guidelines calculations has been resolved and that a *Fatico* hearing will not be required." Def. Letter, dated July 7, 2015.

[2] By the Court's calculations, the § 2255 petition is 7 months late. See discussion at p 6-7 infra.

in violation of 18 U.S.C. § 1028(A).³ See Transcript, dated November 26, 2014 ("Tr."), at 11:18–25, 12:1–9, 28:8–11; Judgement, dated September 21, 2015, at 1. The Government charged that over the course of at least three years Sanchez and others "engage[d] in a scheme involving the filing of fraudulent income tax returns and the cashing of fraudulent tax refunds." Superseding Indictment, dated Nov. 19, 2014, ¶ 2. Specifically, Sanchez and his co-conspirators improperly acquired other persons' social security numbers, and then filed fraudulent income tax returns in the names of the holders of those social security numbers in order fraudulently to obtain tax refunds in the form of U.S. Treasury checks. Tr. at 40. Sanchez and his co-conspirators bribed bank employees and others to cash the checks. Id. The Government alleged that Sanchez and his co-conspirators obtained $1 million plus in fraudulent refunds via this conspiracy. Id. at 41.

During his plea allocution on November 26, 2014, Sanchez confirmed that he had read and reviewed with his attorney the Pimentel letter, dated November 25, 2014, provided by the Government which set forth each offense to which Sanchez was pleading guilty and the

---

³ The advice of rights forms stated, among other things, that: "I have received and read a copy of the indictment. . . and understand the nature of the charges made against me. I have told my attorney all I know about the matters referred to in the indictment. . . . My attorney has explained to me the nature of the charges against me, my constitutional rights, and the punishment that could be imposed by the Court upon my plea of guilty, including any maximum and mandatory minimum terms of imprisonment, the effect of any term of supervised release that may be imposed, the possibility of an order of restitution if any financial injury was caused by the offense(s), and the fact that the court must consider any applicable sentencing guidelines, but may depart from those guidelines under some circumstances. . . . **My decision to plead guilty is freely and voluntarily made.** . . . I have not been induced to plead guilty by any force, coercion, pressure or fear. I am pleading guilty because after discussing the case with my attorney I believe that I am guilty. I am satisfied with how my attorney represented me. My attorney has advised me that he does not believe that there are any meritorious defenses to the count or counts to which I am pleading guilty and that after discussing the facts with me he does not believe that any of my constitutional rights have been violated. . . ." Advice of Rights Form, signed November 26, 2014, at 1-2. (Emphasis added)

Government's calculations of Sanchez's U.S. Sentencing Guidelines range. Tr. at 3:4-3:16. Sanchez also confirmed that he had reviewed the Indictment with his attorney (Osuna), that he had discussed with his attorney any possible defenses he might have to the charges in the Indictment, and that he was fully satisfied with his attorney's representation and legal advice. Id. at 8:3-9:5.

Before his sentencing, Sanchez and the Government entered into a post-plea agreement, dated July 2, 2015 ("Post Plea Agreement"), in which, among other things, Sanchez stipulated to a U.S. Sentencing Guidelines range of 42 to 48 months' imprisonment. See Post Plea Agreement, dated July 2, 2015, at 3. The Post Plea Agreement also provided: (i) if Sanchez received a sentence within or below the stipulated Guidelines range, Sanchez would not file a direct appeal, or bring a collateral challenge under Title 28, United States Code, Section 2255 on any grounds other than ineffective assistance of counsel. Id. at 4-5; and (ii) Sanchez pled guilty to Counts One through Three of the Indictment and determined to plead guilty because he was in fact guilty. Id. at 5.[4]

On September 21, 2015, Sanchez was sentenced to 8 months of incarceration on counts (1) and (2) to run concurrently, and 24 months on count (3) to run consecutively. See Judgment, dated September 21, 2015, at 2. Three years of supervised release were also imposed, along with a $300 special assessment, and restitution in the amount of $144,746. Id.[5]

---

[4] Sanchez did not file a direct appeal.

[5] In Sanchez's letter to the Court, submitted on or about August 10, 2015, Sanchez states: "I am writing this letter so that you know about the human being you will sentence. . . . [M]y political party the PLD won elections in the DR [(Dominican Republic)] and I was appointed as Public Prosecutor in my town, I fought crime and drug trafficking. . . . Months passed and the CO [(Certificate of Occupancy)] never came, so my partner decided to open without the permits, because neither of us had money to continue paying the rent[.] I refused, so he kidnapped me at

4

**For the reasons set forth below, Sanchez's motion [#75] is denied.[6]**

## II.     Legal Standard

Section 2255 habeas motions must be filed within one year from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f). Motions filed more than one year after that date are untimely and may be denied. Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005).

Collateral relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

"[S]crutiny of counsel's performance must be highly deferential because we must apply a strong presumption that counsel's conduct falls within in the wide range of reasonable professional assistance." Rivas v. Fisher, 780 F. 3d 529, 546 (2d Cir. 2015).

---

gun point and hit me several times until I blacked out for this he received a 15 year sentence. . . . Your Honor, I know the reach of my mistake, I have been informed of the Sentencing Guidelines for this crime, I only want to let you know with this letter of my repentance, of the suffering it has caused me to watch my mother cry every time she comes to visit me, the suffering of my wife, facing alone all the family economic responsibilities including mortgage payment." Def. Letter filed August 10, 2015.

[6] **Any arguments raised by the parties but not specifically addressed herein have been considered by the Court and rejected.**

III. **Analysis**

**Sanchez's Motion is Untimely**

Because Sanchez's Judgment was entered on September 21, 2015, Sanchez had until October 5, 2015 to file a notice of (direct) appeal, i.e., 14 calendar days from the date of entry of judgment. Accordingly, the deadline for Sanchez to file his § 2255 petition was October 5, 2016. See Fed. R. App. P. 4(b)(1)(A); see also Moshier, 402 F.3d at 118. By filing his petition on May 18, 2017, Sanchez exceeded the deadline by approximately 7 months. See Simpson v. Greene, 2003 WL 22999489, at *1 (S.D.N.Y. Dec. 22, 2003) (§ 2255 petition filed three months after deadline was untimely).

Sanchez, who according to his counsel "was a trained attorney in the Dominican Republic and a business man with many years' experience in New York," Osuna Aff. at 1, offers no persuasive justification for missing the deadline; and he offers no basis for "equitable tolling" of the one-year limitations period. Sanchez claims — without offering any proof — that he wrote to the Clerk of the District Court on October 14, 2016 to request forms and instructions to file a pro se § 2255 motion but, as he also alleges, he never received a response to his letter. Pet.'s Motion at 13. According to Sanchez, this failure of the Clerk to respond, caused Sanchez to retain new counsel to pursue his ineffective assistance claim. Id.

The Court finds that even if there were such a letter requesting form(s) for a § 2255 petition that had been sent on October 14, 2016 to the Clerk of the District Court, that letter (itself) would have been sent (shortly) after the one-year deadline. See 28 U.S.C. § 2255(f). Sanchez offers no proof of service of his letter upon the Clerk or a copy of the letter, and he has not shown any "extraordinary circumstances [that] prevented him from filing his petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000); see also Rosa v. Breslin, 2004 WL

1065538, at *3–*5 (S.D.N.Y. May 11, 2004); see also Sanders v. Chappius, 2012 WL 6756238, at *6 (S.D.N.Y. Nov. 9, 2012) ("A petitioner's pro se status is not in itself an extraordinary circumstance that merits equitable tolling.").

**No Proof of Ineffective Assistance of Counsel**

Even assuming arguendo that Sanchez's petition were timely, there is no evidence that attorney Osuna was ineffective. For example, Sanchez has not shown that counsel, as opposed to Sanchez himself, was responsible for Sanchez's decision to plead guilty or that pleading guilty was not a reasonable disposition of Sanchez's case. Tr. at 32:13–25, 33:1–2, 34:1–10; see also United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005).

As noted, on November 26, 2014, Sanchez pled guilty to three counts. The third count of aggravated identity theft appears to be the focus of Sanchez's § 2255 petition. Pet.'s Motion at 5 ("I was the victim of ineffective assistance of counsel. The plea to count 3 was without factual basis," because "[a] tax refund Treasury check payable to an individual is not [] a 'means of identification of another person' as required by 18 U.S.C. § 1028(d)(3), defining 'identification document.'").

Sanchez's claim is without merit. During Sanchez's plea allocution, the Government described in detail Sanchez's participation in the sophisticated scheme to file fraudulent tax returns and to acquire, buy, sell, and cash fraudulent U.S. Treasury refund checks. See Tr. at 40-41. The Government stated that Sanchez had "agreed with others to have stolen Social Security numbers, dates of birth, to use in connection with filing fraudulent returns, fraudulent tax returns that were electronically submitted to the government; that those [refunds] were systematically directed to physical addresses of the defendant and other members of the conspiracy. . . [A]fter the tax returns generated refund checks, those refund checks were tracked. They were then

7

obtained from those physical addresses, and then they were negotiated; the defendant, in particular, paying [for] a vast amount of checks. . . He traveled regularly to Baton Rouge, where he [] had a connection and he negotiate[d] these stolen tax refund checks for a face value of the check. He then would open bank accounts and had others open bank accounts and deposit the cash from those checks into those banks accounts, bank accounts that he controlled, and ultimately the money from. . . those bank accounts would be withdrawn in the Bronx." Id. at 40:15 - 41:9. The Government stated that it "would have established [Sanchez's guilt] through documentary evidence, including bank records, including IRS records, [and] including travel records[.]". Id. at 41:10-15. The Government also planned to call at trial, among other witnesses, two of Sanchez's co-conspirators who would have "testified about their roles in the fraudulent scheme, and their involvement with the defendant and his Baton Rouge check cashing operation." Government Bail Submission, dated Dec. 3, 2014, at 4. The Government stated it would also call IRS employees and employees of the banks (that Sanchez used in his fraudulent scheme) to testify that "throughout 2012, fraudulently-obtained tax checks issued to residents of the Bronx and surrounding areas were cashed at grocery stores in Baton Rouge," and that on one occasion Sanchez provided his co-conspirators with a list of "more than 250 stolen identities" which alone caused a loss of "$1,121,138 in refunds for the 2011 Tax Year." Id. at 4-5. The Government also planned to present at trial records from the Sanchez's family member's bank accounts that would show that "throughout 2012, large amounts of cash were deposited at the banks' Baton Rouge branches into each of the accounts. And large amounts of cash were withdrawn a few days later [presumably by Sanchez's wife] from the same accounts at the bank's branches in the Bronx." Id. at 5. The Government also had "flight records demonstrating that, whenever the checks were cashed and the corresponding cash deposits were made, the

8

defendant was either in Louisiana or had just left there." Id. The Government contended Sanchez's scheme caused a loss "somewhere between $1,000,000 and $2,500,000." Tr. at 23:19–25.

Sanchez's own statements undermine his claim of ineffective assistance. See United States v. Grzybek, 283 F. App'x 843, 845 (2d Cir. 2008) ("It is well established that '[a] criminal defendant's self-inculpatory statements made under oath at this plea allocution carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them.'"). At his plea hearing, Sanchez stated under oath that he bought and sold fraudulent U.S. Treasury checks that were in the name of persons other than himself and that those checks were obtained by him as a result of fraudulent income tax forms that had been filed with the government. See Tr. at 28 –33 (Q: In your words, what it is that you did and when you did it that makes you believe that you are guilty of those three offense[s]? . . . A. There was that opportunity to [make] cash, . . . so I bought and sold fraudulent checks. . . . Q: And what did you do with these checks? A. I would buy them from my sister at 60 percent and I would sell them to my brother-in-law -- no, not to my brother-in-law, to the husband of my stepdaughter at 70 percent, so I earned 10 percent. . . . Q: When did this happen by the way? A. In 2012. Q: So you knew that these checks were the result of fraudulent income tax forms that had been filed, right? A: Yes, your Honor. . . . Q: And then you actually bought the checks and sold the checks, right? A: Yes, your Honor. . . . Q: And the checks were not in your name, I take it, right? A: No, your Honor. . . . Q: So you understood that the checks that you bought from your sister were in the names of real people but they were not you. A: Yes, your Honor. . . . Q: And are you pleading guilty because you are in fact guilty of each [count] is that right? A: Yes, your Honor.). Sanchez also confirmed that he was satisfied with Osuna's legal representation. See id. at 8:14-

9

24 (Q: Mr. Sanchez, have you had a full opportunity to discuss all aspects of this case with your attorney? A: Yes, your Honor. Q: Including any possible defenses that you might have to the charges in the Indictment to which you have offered to plead guilty? A: Yes, sir, your Honor. Q: And are you fully satisfied with your attorney's legal representation of you? A: Yes, your Honor. Q: Are you fully satisfied with the legal advice that he has given you? A: Yes, your Honor.). Following his plea allocution, Sanchez attested (in the Post Plea Agreement) that he "decided to plead guilty because he is in fact guilty." See Post Plea Agreement at 5.

The Government correctly points out in its Opposition that Sanchez "knew that the names on the Treasury checks he illegally possessed and used belonged to real people" other than himself. Gov't Opp'n at 14. This, along with the other statements described above, is sufficient to support Sanchez's guilty plea to his crimes, including aggravated identity theft under 18 U.S.C. § 1028(A). See Flores-Figueroa v. United States, 556 U.S. 646, 648 (2009) (the statute "requires the Government to show that the defendant knew that the means of identification at issue belonged to another person."); United States v. Lewis, 408 Fed. App'x. 423, 425 (2d.Cir. 2010) (fraudulent passport applications containing social security numbers and names of real individuals provided sufficient evidence to support the defendant's conviction for violating § 1028(A)); United States v. Wilson, 788 F.3d 1298 (11th Cir. 2015) (where the "use of a person's name and forged signature [on Treasury checks] qualifies as a 'means of identification' for purposes of aggravated identity theft under § 1028(A)"); United States v. Morel, 885 F.3d 17, 22–23 (1st Cir. 2018) (where the Court had "no difficulty finding that a name together with a forged endorsement signature placed on a tax refund check constitute a 'means of identification' for purposes of § 1028(A)"); United States v. Porter, 745 F.3d 1035, 1042–43 (10th Cir. 2014).

As the Government also proffered at Sanchez's plea allocution, Sanchez participated in the criminal conspiracy for "many years," and, as part of that conspiracy, he agreed with others to acquire and use stolen Social Security numbers and dates of birth to file fraudulent tax returns and profit from tax refunds. Tr. at 40:9-41:21. Sanchez provided co-conspirators with at least three lists containing stolen Social Security numbers which were used to file fraudulent returns. Id. Sanchez cashed the U.S. Treasury checks that had been issued pursuant to these returns and deposited the funds into bank accounts which he controlled. Tr. at 40:15-41:9. His conduct establishes, among others, the crime of aggravated identity theft under § 1028(A). See 18 U.S.C. § 1028(d)(7) ("means of identification" includes "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any . . . name [or] social security number").

It also appears that the evidence against Sanchez, as described above, was so substantial that it was prudent for him to plead guilty, and that his counsel would not have been ineffective if he encouraged Sanchez to do so. See Oliver v. United States, 2008 WL 190487, at *4 (S.D.N.Y. Jan. 22, 2008) (where the evidence against defendant was so substantial, "counsel was not ineffective for advising [the defendant] to plead guilty"). In sum, it plainly appears from the Government's proffered evidence, Sanchez's plea allocution, and the Post Plea Agreement, that the evidence against Sanchez was overwhelming; that Sanchez was guilty of the Counts to which he pled; and that his plea was knowing, voluntary and in accordance with the law. See Puglisi v. United States, 586 F.3d 209, 211 (2d Cir. 2009); Feliz v. United States, 2002 WL 1964347, at *7–*8 (S.D.N.Y. Aug. 22, 2002).

With respect to the issue of prejudice, Sanchez "provides no actual or objective evidence that would support his assertion that but for [trial counsel's] purported errors, he would have

11

taken his case to trial." See Hernandez v. United States, 2010 WL 1558559, at *11 (S.D.N.Y. April 19, 2010). To the contrary, "[i]n light of the overwhelming evidence against him, Sanchez has not shown (and cannot show) that he suffered any prejudice in following his counsel's [purported] advice to plead guilty." Gov't Opp'n at 13. Sanchez's "unreliable, self-serving assertions of prejudice are of precisely the type that courts adjudge insufficient under Strickland's second prong." See Hernandez, 2010 WL 1558559, at *11. And, Sanchez offers no rebuttal to trial counsel Osuna's affirmation that he was "ready to try the case and would have done so had the defendant desired to go to trial or if there was no factual basis for the guilty pleas." Osuna Aff. ¶ 4.

## IV.  Certificate of Appealability

The Court does not recommend that a certificate of appealability be issued because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); see United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997).

## V.  Conclusion & Order

For the reasons stated herein, Sanchez's Motion [#75] is denied. The Clerk of Court is respectfully requested to close this case.

Dated: New York, New York
       January 8, 2019

_RMB_
RICHARD M. BERMAN
U.S.D.J.